THE HONORABLE JOHN C. COUGHENOUR

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| MICHELE OSTWALD,<br><br>        Plaintiff,<br><br>    v.<br><br>THE HARTFORD INSURANCE COMPANY OF THE MIDWEST, a foreign insurance company,<br><br>        Defendant. | CASE NO. C19-0685-JCC<br><br>ORDER |

This matter comes before the Court on Defendant Hartford Insurance Company of the Midwest's ("Hartford") motion for summary judgment (Dkt. No. 18) and Plaintiff Michelle Ostwald's cross-motion for summary judgment (Dkt. No. 20). Having considered the parties' briefing and the relevant record, the Court hereby GRANTS Hartford's motion and DENIES Ms. Ostwald's motion for the reasons explained herein.

**I.  BACKGROUND**

Between August 2009 and August 2012, Wayne Ostwald allegedly sexually abused and assaulted K.M.F., his granddaughter, while he and his wife, Ms. Ostwald, were babysitting K.M.F. (Dkt. No. 20-1 at 10.) Although Mr. Ostwald denied abusing K.M.F., he entered an Alford plea and was sentenced to prison for violating Wash. Rev. Code § 9A.44.089—child molestation in the third degree. (Dkt. No. 20-2 at 92–93.)

After Mr. Ostwald was sentenced to prison, K.M.F.'s attorney sent the Ostwalds a demand letter with a copy of a civil complaint for damages. (Dkt. No. 20-1 at 5–13.) The complaint asserted claims against Mr. Ostwald for battery, assault, negligent infliction of emotional distress, and outrage. (*Id.* at 11–12.) In addition, the complaint asserted a claim against Ms. Ostwald for "negligent failure to protect." (*Id.* at 12.) According to the complaint,

> 26. Defendant Michelle Ostwald had a special relationship with K.M.F., and a duty of reasonable care to protect K.M.F. from sexual abuse by third parties;
> 27. Defendant Michelle Ostwald failed to reasonably correct [sic] K.M.F. from a lengthy pattern of criminal sexual abuse that occurred in her own household; [and]
> 28. Defendant Michelle Ostwald's negligent failure to protect resulted in damages, including severe emotional distress.

(*Id.* at 12.)

Ms. Ostwald sent a copy of the complaint to Hartford, asking it to defend her under her homeowner's insurance policy.[1] (Dkt. No. 20-22 at 33–35.) That policy contains the following relevant provisions relating to coverages and exclusions:

> **Section II – Liability Coverages**
> **A.     Coverage E – Personal Liability**
> If a claim is made or a suit is brought against an "insured" for damages because of "bodily injury" . . . caused by an "occurrence" to which this coverage applies, we will:
> **1.**     Pay up to our limit of liability for the damages for which an "insured" is legally liable. . . . and
> **2.**     Provide a defense at our expense by counsel of our choice, even if the suit is groundless, false, or fraudulent. . . .
> . . .
> **Section II – Exclusions**
> . . .
> **E.     Coverage E – Personal Liability** . . .
> Coverage[] E . . . do[es] not apply to the following:
> **1.     Expected or Intended Injury**
> "Bodily injury" . . . which is expected or intended by an "insured" even if the resulting "bodily injury" . . . .
> **a.**     Is of a different kind, quality or degree than initially expected or intended;

---

[1] The complaint Ms. Ostwald sent to Hartford was identical in all material respects to the complaint K.M.F. eventually filed. (*Compare* Dkt. No. 19-1, *with* Dkt. No. 19-2.)

     **b.**  Is sustained by a different person . . . than initially expected or intended.

. . .

  **6.**  **Sexual Molestation, Corporal Punishment Or Physical Or Mental Abuse**

    "Bodily injury" . . . arising out of sexual molestation, corporal punishment, or physical or mental abuse . . . .

(Dkt. No. 19-3 at 21, 23–24.) The policy also contains the following relevant definitions:

  **3.**  "Bodily injury" means bodily harm, sickness or disease . . . . "Bodily injury" includes required care, loss of services and death resulting from covered bodily harm, sickness or disease.

. . .

  **11.**  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions, which results, during the policy period, in:
    **a.**  "Bodily injury" . . . .

(*Id.* at 1, 4.)

  One month after receiving the complaint, Hartford informed Ms. Ostwald that it would not defend her against K.M.F.'s civil suit. (Dkt. No. 20-1 at 64–66.) Hartford explained its decision by pointing to the exclusions in Ms. Ostwald's policy for expected or intended injuries and for injuries arising out of sexual molestation. (*See id.* at 65.) According to Hartford, those exclusions precluded coverage because Ms. Ostwald "expected the alleged sexual abuse" and because "the claimed damages arose out of or are related to sexual molestation." (*See id.* at 65–66.)

  Following Hartford's denial of coverage, the Ostwalds settled K.M.F.'s civil suit for $950,000. (*See* Dkt. No. 20-2 at 85, 96, 99–102.) Ms. Ostwald subsequently filed suit against Hartford, alleging that it breached its duty to defend her; acted in bad faith; violated Washington's Insurance Fair Conduct Act, Wash. Rev. Code §§ 48.30.010, 015; and violated Washington's Consumer Protection Act, Wash. Rev. Code § 19.86.010 *et seq.* (*See* Dkt. No. 1-1 at 4–6.)

  Hartford now moves for summary judgment on the ground that it had no obligation to defend the claims against Ms. Ostwald. (Dkt. No. 18 at 11.) Ms. Ostwald also moves for

summary judgment on the grounds that Hartford (1) violated its duty to defend; (2) acted in bad faith; (3) is estopped from denying coverage on K.M.F.'s claims; (4) is liable for the full amount the Ostwalds' settlement with K.M.F.; and (5) is liable for reasonable attorney fees and costs. (Dkt. No. 20 at 1, 21.)

## II. DISCUSSION

Hartford argues that K.M.F.'s claim against Ms. Ostwald is not conceivably covered by Ms. Ostwald's insurance policy for three reasons: (1) K.M.F.'s injuries arose out of sexual molestation or abuse; (2) K.M.F.'s injuries were intended or expected by an insured; and (3) K.M.F.'s injuries were not caused by an occurrence because they were not accidental. (*See* Dkt. No. 18 at 2.) Plaintiff responds that K.M.F.'s injuries arose out of Ms. Ostwald's "post-assault negligence," not Mr. Ostwald's abuse, and that Washington's "efficient proximate cause rule" renders Ms. Ostwald's negligence a covered occurrence despite the "intended or expected" exclusion in her policy. (*See* Dkt. Nos. 20 at 13–16, 26 at 3–8.) But Ms. Ostwald misreads K.M.F.'s complaint: K.M.F. did not allege that Ms. Ostwald acted negligently after Mr. Ostwald's abuse was over. Instead, K.M.F. alleged only that Ms. Ostwald failed to prevent her husband's abuse. As a result, K.M.F.'s claim "arose out of" Mr. Ostwald's abuse and is not conceivably covered by the Ostwalds' insurance policy. Accordingly, the Court need not reach the parties' arguments about Washington's efficient proximate cause rule.

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Material facts are those that may affect the outcome of the case, and a dispute about a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). In deciding whether there is a genuine dispute of material fact, the court must view the facts and justifiable inferences to be drawn therefrom in the light most favorable to the nonmoving party.

*Id.* at 255. The court is therefore prohibited from weighing the evidence or resolving disputed issues in the moving party's favor. *Tolan v. Cotton*, 572 U.S. 650, 657 (2014).

### B. Hartford's Duty to Defend K.M.F.'s Claim Against Ms. Ostwald

To determine whether a claim is covered under an insurance policy, an insurer must generally look to the "eight cor[n]ers" of the policy and the complaint against the insured. *See Xia v. ProBuilders Specialty Ins. Co.*, 400 P.3d 1234, 1240 (Wash. 2017). If neither document raises an issue of fact or law that could conceivably result in coverage, then the insurer need not defend. *Id.* But "if there is any reasonable interpretation of the facts or law that could result in coverage, the insurer must defend." *Am. Best Food, Inc. v. Alea London, Ltd.*, 229 F.3d 693, 696 (Wash. 2010). And if the facts in the complaint are ambiguous, then the insurer must investigate facts outside of the complaint to determine if the insured is conceivably covered. *See Woo v. Fireman's Fund Ins. Co.*, 164 P.3d 454, 459 (Wash. 2007). Given these standards favoring the insured, insurers typically defend under a reservation of rights when coverage is disputed. *See American Best Food*, 229 F.3d at 696. By defending under a reservation of rights, an insurer avoids breaching its duty to defend and acting in bad faith during the time it takes for a court to clarify ambiguity in the law or facts. *Id.* "[A]n insurer takes a great risk when it refuses to defend on the basis that there is no reasonable interpretation of the facts or the law that could result in coverage." *Xia*, 400 P.3d at 1240.

Here, Hartford's duty to defend turns on both the meaning of the sexual molestation exclusion and the content of K.M.F's complaint. The Court will consider each separately.

#### 1. The Meaning of the Sexual Molestation Exclusion

The first issue the Court must decide is the meaning of the phrase "arising out of" as it appears in the sexual molestation exclusion. (Dkt. No. 19-3 at 24.) The Court concludes that the phrase's meaning is dictated by the Washington Supreme Court's decision in *American Best Food, Inc. v. Alea London, Ltd.*, 229 P.3d 693 (Wash. 2010).

The principles for interpreting terms in insurance contracts are well known.

"Interpretation of an insurance contract is a question of law." *Woo*, 164 P.3d at 459. Terms must be interpreted as the "average person purchasing insurance" would understand them. *Id.* "Undefined terms are to be given their plain, ordinary, and popular meaning." *Key Tronic Corp. v. Aetna (CIGNA) Fire Underwriters Ins. Co.*, 881 P.2d 201, 207 (Wash. 1994). The ordinary meaning of terms is often derived from dictionaries. *Boeing Co. v. Aetna Cas. & Sur. Co.*, 784 P.2d 507, 511 (Wash. 1990). Extrinsic evidence can also be used to define terms, but such evidence is appropriate only if a term is ambiguous. *Am. Nat'l Fire Ins. Co. v. B & L Tucking & Const. Co.*, 951 P.2d 250, 256 (Wash. 1998). And if a term's ambiguity cannot be resolved by extrinsic evidence, then the term must be construed in favor of the insured. *Weyerhauser Co. v. Commercial Union Ins. Co.*, 15 P.3d 115, 141 (Wash. 2000). This is particularly true of exclusionary clauses, which "are to be most strictly construed against the insurer." *Phil Schroeder, Inc. v. Royal Globe Ins. Co.*, 659 P.2d 509, 511 (Wash. 1983).

In *American Best Food*, the Washington Supreme Court applied these interpretive principles to an exclusionary clause precluding coverage for "any claim arising out of . . . Assault and/or Battery." 229 P.3d at 696. The court began by acknowledging that cases had broadly defined "arising out of" to mean "'originating from,' 'having its origin in', 'growing out of', or 'flowing from.'" *See id.* at 698 (quoting *Toll Bridge Authority v. Aetna Ins. Co.*, 773 P.2d 906, 908 (Wash. Ct. App. 1989)). The court did not disagree with that definition, and it endorsed cases holding that "arising out of" exclusions preclude coverage for suits alleging that an insured negligently failed to prevent an assault. *See id.* at 697 (discussing *McAllister v. Agora Syndicate, Inc.*, 11 P.3d 859, 861 (Wash. Ct. App. 2000)). But the court observed that there was "legal ambiguity" as to whether an "arising out of" exclusion precludes coverage for post-assault negligence that enhances a person's injuries. *See id.* at 699. The court then resolved that ambiguity in favor of the insured, finding that the exclusionary clause at issue did not apply to a person's claim that the insured's security guards negligently dumped the person on the sidewalk after he was shot. *Id.* at 699.

*American Best Food*'s definition of "arising out of" applies here. Under that definition, an injury "arises out of" sexual molestation or abuse—and is not conceivably covered by the Ostwalds' policy—if an insured causes the injury by behaving negligently before the abuse. Such negligence would include, for example, failing to stop the abuse. *See Safeco Ins. Co. of Am. v. Wolk*, C18-5368-RBL, Dkt. No. 20 at 10 (W.D. Wash. 2018) (concluding negligent supervision claim arose out of sexual abuse where a woman allegedly failed to stop her husband from abusing a minor in their home); *Capitol Specialty Ins. Co. v. JBC Enter. Holdings, Inc.*, 289 P.3d 735, 736–38 (Wash. Ct. App. 2012) (holding claims against nightclub owner for negligent hiring, training, supervision, and failure to provide adequate security arose out of the use of a firearm where a patron alleged that he was shot because the owner failed to "keep the Plaintiff safe"); *McCallister*, 11 P.3d at 860–61 (holding claim was "based on assault and/or battery" where a nightclub patron alleged that security personnel negligently failed to intervene in a fight). If, however, an insured "enhances" the injury by behaving negligently after the abuse, then the injury would not "arise out of" the abuse and would be covered. *See Homesite Ins. Co. of the Midwest v. Walker*, C18-5879-BHS, Dkt. No. 28 at 13–14 (W.D. Wash. 2019) (citing *American Best Food*, 229 P.3d at 698) (holding that "arising out of" exclusion did not apply because the insureds were sued for "fail[ing] to recognize and provide for" a child after the child was assaulted).

### 2. The Content of K.M.F.'s Complaint

Having determined the meaning of the phrase "arising out of," the Court must decide if K.M.F.'s alleged injuries "arose out of" sexual misconduct or abuse. The Court concludes that they did.

The allegation against Ms. Ostwald is sad but straightforward: K.M.F. alleges that Ms. Ostwald had a "duty . . . to protect K.M.F. from sexual abuse" but failed to do so. (*See* Dkt. No. 20-1 at 12.) Ms. Ostwald's failure to protect K.M.F. from sexual abuse necessarily preceded the abuse itself. Thus, any bodily injury Ms. Ostwald caused to K.M.F. "arose out of" Mr. Ostwald's

abuse and is not conceivably covered under the Ostwalds' insurance policy. *See Wolk*, C18-5368-RBL, Dkt. No. 20 at 10.

Ms. Ostwald disputes this conclusion by reading non-existent allegations into K.M.F.'s complaint. (*See* Dkt. Nos. 20 at 13, 26 at 8–9.) Likening this case to *Homesite Insurance Co. of the Midwest v. Walker*, C18-5879-BHS (W.D. Wash. 2019), Plaintiff argues that K.M.F. brought "allegations of post-assault negligence." (*See* Dkt. No. 26 at 3, 8.) But the allegations in *Walker* were far different than the allegations in this case. In *Walker*, a child brought a claim against a couple for negligent infliction of emotional distress, alleging that she exhibited signs of psychological injuries following her abuse, that the couple negligently failed to notice those signs, and that the couple's negligence caused her additional injuries.[2] *See* C18-5879-BHS, Dkt. No. 28 at 3–4, 12. Here, by contrast, K.M.F. did not allege that the Ostwalds "should [have] forsee[n] the possibility of psychological harm and the need for psychological therapy and counseling for [K.M.F.]" *Compare id.* at 3, *with* (Dkt. No. 20-1 at 12). Nor did K.M.F. allege that the Ostwalds "failed to assist in getting [K.M.F.] necessary psychological treatment to address her developing psychological injuries." *Compare* C18-5879-BHS, Dkt. No. 28 at 4, *with* (Dkt. No. 20-1 at 12). Instead, K.M.F. alleged only that Ms. Ostwald "failed to reasonably [protect] K.M.F. from a lengthy pattern of criminal sexual abuse." (Dkt. No. 20-1 at 12.) That allegation is unambiguous, and Hartford was entitled to rely on that unambiguous allegation in assessing whether it had a duty to defend. *See Woo*, 164 P.3d at 459.

Given that K.M.F.'s complaint unambiguously alleged that Ms. Ostwald's negligence preceded Mr. Ostwald's abuse, K.M.F.'s claim against Ms. Ostwald was not conceivably covered under any reasonable interpretation of the sexual assault exclusion in the Ostwalds'

---

[2] In addition to bringing an NIED claim, the child in *Walker* also brought a claim that the insured couple "had a duty to protect minor Plaintiff L.D. from sexual abuse, which they failed to do." C18-5879-BHS, Dkt. No. 28 at 3. The court concluded that this claim—which is identical to K.M.F's claim against Ms. Ostwald—was not covered by the couple's insurance policy. *See id.* at 10–14. Ms. Ostwald ignores this portion of *Walker*.

insurance policy. Accordingly, Hartford is entitled to summary judgment because it did not breach its duty to defend Ms. Ostwald.

## III. CONCLUSION

For the foregoing reasons, the Court GRANTS Hartford's motion for summary judgment (Dkt. No. 18) and DENIES Ms. Ostwald's cross-motion for summary judgment (Dkt. No. 20).

DATED this 28th day of February 2020.

John C. Coughenour
UNITED STATES DISTRICT JUDGE